**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


INAH AYERS,

     Plaintiff,

v.                                          CASE NO: 8:08-cv-1503-T-26MAP

THE SEMBLER COMPANY,

     Defendant.

_____/


**O R D E R**

Before the Court are cross-motions for summary judgment: (1) Defendant's
Dispositive Motion for Summary Judgment (Dkt. 37), Defendant's Statement of
Undisputed Facts (Dkt. 39), Plaintiff's Response in Opposition (Dkt. 47), Defendant's
Notice of Supplemental Authority (Dkt. 54), and (2) Plaintiff's Motion for Summary
Judgment (Dkt. 31), depositions and declarations (Dkts. 32-35, 40-46), Defendant's
Response in Opposition (Dkt. 51), Defendant's Statement of Disputed Facts in
Opposition (Dkt. 52), and Declaration of Deann Wojcicki.  (Dkt. 53).  After careful
consideration of the applicable law regarding the Family Medical Leave Act, 29 U.S.C.
§§ 2601-2654, as amended, (the FMLA) and the entire file, the Court concludes that the
motions should be denied.

## INTRODUCTION

This action involves Plaintiff's request for a four-week period to visit her ailing father in the Philippines. For various reasons, Defendant did not initially approve of the leave as qualifying under the FMLA; however, when Plaintiff left for the Philippines, she had provisional approval for using her five vacation days and one personal day for the trip. The parties dispute, however, whether Plaintiff could use sick time toward her leave. The parties also dispute whether the paperwork Plaintiff provided to Defendant was sufficient to qualify the leave as FMLA leave. Ultimately, Defendant did not approve of Plaintiff's request for leave under the FMLA, and Plaintiff was terminated the day after she returned, having been placed on suspension for taking leave without approval on the day she returned.

Plaintiff sued Defendant for both interference and retaliation under the FMLA. Plaintiff moves for summary judgment on the interference claim. Defendant moves for summary judgment on both the interference and retaliation claims.

## PERTINENT FACTS

After initially working for Defendant as a temporary employee beginning in April 2006, Defendant accepted a permanent position with Defendant as Development Accounting Assistant on October 16, 2006.[1] Plaintiff reported directly to Alice Coston,

---

[1] The Court must preface the recitation of "pertinent facts" with the observation that the facts throughout the motions are irreconcilable in that the years are often incorrect, or must necessarily be so if they are to make sense. With this in mind, the facts as set forth in this order are not to be relied on at trial or for the exactness of the dates, but

the Director of Accounting, who reported directly to Deann Wojcicki, the Chief Financial Officer.  Rachel Liggio at all relevant times served as the Director of Human Resources, whose assistant was Meredith Hoffman.  The Chief Operating Officer of Defendant was Ron Wheeler, to whom Ms. Wojcicki reported.  All of these individuals were involved in some way in the communications leading up to Plaintiff's four-week absence beginning November 17, 2007.

On October 22, 2007, Defendant gave Plaintiff a copy of Defendant's FMLA policy and forms.  On November 5, 2007, Plaintiff returned to Defendant the completed form as well as a "Medical Certificate" issued by her father's doctor.  On November 16, 2007, Plaintiff returned to Defendant the "Certificate of Healthcare Provider Under the Federal Family and Medical Leave Act of 1993."[2]  On November 26, 2007, Defendant preliminarily approved Plaintiff's leave under the FMLA; however, Defendant's approval was based on an incomplete certification form, which did not reveal whether her father

only as a schema from which to resolve the issues on these cross-motions.

[2]  Dr. Arao was her father's treating physician in the Philippines.  He filled out the "Medical Certificate" on November 4, 2007, and he completed Defendant's "Certificate of Healthcare Provider Under Federal Family and Medical Leave Act of 1993" on November 14, 2007.  The latter document reveals the diagnosis as "hypertensive ischemic cardiovascular disease, LVH, CHF-III-D cardiomyopathy."  He recommended her father was incapacitated "until next exam" which was scheduled for January 2008, or until he improved.  He checked the number 4 box, which indicated that he believed her father had a "chronic condition" of that would 1) require periodic visits by a health care provider or equivalent, 2) continue over an extended period, and 3) perhaps cause episodic incapacity. Dr. Arao indicated that he did not know if her father could work on an intermittent schedule and that he did not know if her father was unable to perform work.

was unable to work. A meeting occurred on December 19, 2007, the day she returned to work. After Defendant learned on December 19, 2007, that Plaintiff's father was able to work in the store and perform his daily duties, and that in Defendant's mind, Plaintiff had not been untruthful in prior communications, she was suspended. The reasons why she was suspended and discharged are in dispute. Defendant claims that Plaintiff was deceitful and dishonest, and Plaintiff claims she can adequately explain her actions leading up to her suspension as being truthful.

By a letter to Plaintiff dated the next day, December 20, 2007, Defendant terminated Plaintiff "because of your conflicting explanations regarding your sick time request we have lost confidence and trust in you as an employee." By letter dated December 21, 2007, Defendant retracted the provisional approval of her leave as falling under the FMLA, notifying Plaintiff that her four-week trip to the Philippines did not qualify under the FMLA. Plaintiff asserts that Defendant determined that Plaintiff's father did not have a "serious health condition" as that term is defined under the FMLA because Plaintiff's father was able to work. Plaintiff's termination became effective on December 20, 2007.

### PLAINTIFF'S MOTION

Plaintiff requests summary judgment solely on her claim for interference with her FMLA rights.[3] Interference is described in section 2615(a)(1), which states that "[i]t shall

---

[3] The parties agree that the one-count Complaint seeks relief for both interference and retaliation under the FMLA.

be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Plaintiff argues, that based on the undisputed evidence, she in fact qualified for leave pursuant to the FMLA such that summary judgment should be entered in her favor on the interference claim for this reason alone.

Section 2612(a)(1)(C) specifies the leave granted under the FMLA as "a total of 12 workweeks of leave during any 12-month period . . . to care for the . . . parent, of the employee, if such . . . parent has a serious health condition." "Serious health condition" is defined as:

> an illness, injury, impairment, or physical or mental condition
> that involves—
> (A) in patient care in a hospital, hospice, or residential
> medical care facility; or
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). A more detailed definition is found in 29 C.F.R. § 825.114(a), and regulations are given "controlling weight unless, they are arbitrary, capricious, or manifestly contrary to the statute." McGregor v. Autozone, Inc., 180 F.3d 1305, 1307 (11th Cir. 1999) (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The parties, however, do not challenge any regulation as arbitrary, capricious, or contrary. Rather, Plaintiff primarily contends that the burden rested on Defendant to either obtain a second opinion

regarding the condition of her father's health, <u>see</u> 29 U.S.C. § 2613(c),[4] or contact her to discuss why Defendant believed that her father's condition did not qualify as a "serious health condition."

To establish an FMLA interference claim, the plaintiff must prove that she was "denied an available benefit under the FMLA or was not allowed to return" to her position after taking the leave. <u>Strickland v. Water Works & Sewer Bd. of City of Birmingham</u>, 239 F.3d 1199, 1208 (11th Cir. 2001); <u>Bender v. City of Clearwater</u>, 2006 WL 1046944, at *10 (M.D. Fla. Apr. 19, 2006). The issue in an interference claim is whether the employee is entitled to the rights granted under the FMLA, and not whether the employer *intended* to interfere with those rights. <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1293-94 (11th Cir. 2006) (citing <u>Strickland</u>). Plaintiff asserts that she was denied the benefit of taking four weeks off to take care of her father because he did in fact have a "serious health condition" as that phrase is defined under the FMLA.

Defendant responds that Plaintiff received her leave, regardless of whether it was categorized as leave under the FMLA or sick leave. <u>See</u> <u>Ragsdale v. Wolverine World</u>

---

[4]  Section 2613(c)(1) titled "Certification—Second Opinion" provides in pertinent part:

> In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.

Wide, Inc., 535 U.S. 81, 90-91, 122 S.Ct. 1155, 1162, 152 L.Ed.2d 167 (2002) (reasoning that the FMLA and its regulations should not be read to "relieve[] employees of the burden of proving any real impairment of their rights and resulting prejudice."). In this vein, Defendant asserts that permitting Plaintiff to return from her trip with her position available is sufficient to prove that she was not denied the benefit of the FMLA. Having reinstated her to her position upon her return, Defendant argues that it must not be found to have denied benefits under the FMLA for suspending or terminating Plaintiff the day she returned for reasons wholly unrelated to her FMLA leave. See Martin v. Brevard County Public Schools, 543 F.3d 1261, 1267 (11th Cir. 2008) (finding genuine issue of material fact regarding whether employee would have been discharged had he not taken FMLA leave).

Having reviewed the record and the case law, the Court finds that genuine issues of material fact exist with respect to the interference claim. Plaintiff was reinstated in her position, if only for a few hours, on the day she returned. The reasons for Plaintiff's termination are disputed—did the Defendant terminate her because she took leave or because she had engaged in a course of dishonest and questionable conduct that came to light only through the process of requesting and obtaining the leave. Consequently, summary judgment on the interference claim must be denied.

## DEFENDANT'S MOTION

Defendant maintains that summary judgment should be granted in its favor on both the interference and retaliation claims. For the reasons set forth above supporting the

denial of Plaintiff's motion directed to her interference claim, the Court likewise denies summary judgment in favor of Defendant on the interference claim. For the following reasons, the Court also denies summary judgment on the retaliation claim.

To establish a claim for retaliation under the FMLA, the plaintiff must show (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, such as discharge, and 3) the protected activity is causally related to the adverse action. <u>Martin</u>, 543 F. 2d at 1268; <u>Drago v. Jenne</u>, 453 F.3d 1301, 1307 (11th Cir. 2006). Once the prima facie case is shown, then the burden shifts to the employer to articulate a legitimate reason for the adverse action. <u>Id</u>. If the employer succeeds, then the burden shifts back to the employee to show that the reason given was pretextual. <u>Id</u>. For purposes of this summary judgment, Defendant concedes that the first two prongs of the prima facie case have been established. Thus, the causal connection between the Plaintiff's termination and her assertion of her right to leave under the FMLA is the only prong at issue.

Addressing whether the decision to terminate Plaintiff upon her return from the Philippines and her request to characterize the leave under the FMLA, the Court finds that genuine issues of material fact exist. Even if the October 11, 2007, date is used as the triggering event for causation, as opposed to a date some time nearer to the December 19 or 20, 2007, discharge, the length of time between the protected activity of requesting leave under the FMLA and the adverse action does not per se rule out a finding of the

necessary causation.  With less than three months elapsing between these outside dates,[5] there is no precedent for dismissing the need to more fully flesh out the factual details of causation at trial when the jury may resolve any disputes in the context of the credibility of the witnesses.

Assuming Plaintiff established a prima facie case of retaliation, Defendant next argues that its legitimate non-discriminatory reason for discharge—the revelation of a dishonest course of conduct on her part— can not be negated by Plaintiff's attempts to show that the reason is pretextual.  Having reviewed the record, however, the Court finds that genuine issues of material fact exist with respect to the reasons for discharge. Clearly, the parties dispute whether Plaintiff's actions constituted a "dishonest" act. Specifically, Plaintiff contends that her past actions do not amount to any dishonesty or reason for distrust on the part of the Defendant.  In other words, the parties have made it clear that there are two sides to the story, and this position is best left for the jury to sort

---

[5]    In Jenne, three months passed between the protected activity and the adverse action, and the issue of causation was not deemed to require consideration by a jury. Jenne relied on Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001), in which three and one-half months passed between the events, and again, the time period alone was too great to establish causation.  On the other hand, when a six-month period has been interspersed with continuous complaints, i.e., incidents of protected activity, the causation prong may not be satisfied in the summary judgment posture.  See Cobb v. Syniverse Techs., Inc., 359 F.Supp.2d 1287, 1290 (M.D. Fla. 2005).

through while observing the demeanor of the witnesses. Consequently, summary judgment is denied on the retaliation claim.[6]

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendant's Dispositive Motion for Summary Judgment (Dkt. 37) is

        **DENIED.**

(2)     Plaintiff's Motion for Summary Judgment (Dkt. 31) is **DENIED.**

(3)     This case shall proceed to trial.

**DONE AND ORDERED** at Tampa, Florida, on November 13, 2009.


        _s/Richard A. Lazzara_
        **RICHARD A. LAZZARA**
        **UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record

---

[6]  Defendant's contention with respect to the after-acquired evidence doctrine, see McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), and the limiting of certain equitable remedies, will be left for determination at trial, after all of the factual disputes have been resolved.